416 So.2d 97 (1982)
STATE of Louisiana
v.
Lionel TALBERT.
No. 81-KA-3268.
Supreme Court of Louisiana.
June 21, 1982.
*98 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Ralph L. Roy, Asst. Dist. Attys., for plaintiff-appellee.
Vincent Wilkins, Jr., Asst. Public Defender, David Randall Buckley, Bonnie P. Jackson, Appellant Counsel, Baton Rouge, for defendant-appellant.
ROBERT L. LOBRANO, Justice Ad Hoc.[*]
Defendant Lionel Talbert was charged by grand jury indictment with aggravated rape, a violation of R.S. 14:42, and armed robbery, a violation of La.R.S. 14:64, which occurred on July 27, 1978. On November 6, 1978, defendant pleaded not guilty. His motion to suppress the photographic lineup was denied on December 10, 1980. On May 29, 1981, a unanimous 12 person jury found defendant guilty of aggravated rape. He was sentenced on October 22, 1981 to life *99 imprisonment, without benefit of probation, parole, or suspension of sentence. On appeal, he urges four assignments of error.
FACTS
On July 27, 1978 the victim testified that she had just gone to bed when she heard a knock at the front door. She got up, went to the front room, turned on the light, and asked "who is it?" A man's voice responded "Doc". She recognized the voice as belonging to the man who had raped her one month earlier, so she immediately ran back to the bedroom to get her gun. As she was returning with the gun, she heard a loud crash. The front door had been kicked down and was laying in the middle of the living room floor. She remembers hearing several clicking sounds from defendant's gun before it fired once. Terrified for her six year old child who had been sleeping next to her, the victim laid her gun down and told defendant not to enter the bedroom. Defendant told her to come in the living room and lie down on the floor, which she did. He then raped her and took $60.00 in cash from her wallet.
Approximately one month prior, a similar incident had occurred, except on that occasion she voluntarily opened the door after the man identified himself as "Doc". "Doc" (Herman Wright) was a friend of hers and it was not unusual for him to visit her late at night. However, the man at the door was not the man she knew as "Doc". He entered the house, and although he did not have a gun, raped her. He told her he would return and kill her if she told anybody. She explained that she did not report this first incident to the police because she believed she would not be able to prove it was rape since she opened the door voluntarily.
Defendant denies any involvement in the first incident, but does admit to sexual intercourse with the victim on the other occasion. However, he asserts that she consented to have sex with him.
ASSIGNMENT OF ERROR NO. 1
Appellant argues that the trial court committed error in admitting evidence of a prior crime allegedly committed by appellant. This, he urges made it impossible to receive a fair trial.
Generally, evidence of other crimes committed by the defendant is inadmissible due to "substantial risk of grave prejudice to the defendant". State v. Prieur, 277 So.2d 126 (La.1973). However, there are certain exceptions to this exclusionary rule. Under La.R.S. 15:445 and 446,[1] evidence of acts similar to that charged is admissible to show intent, knowledge, or system. Beyond the literal terms of these statutes, this Court has held to be admissible, for limited purposes, proof of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. State v. Ballard, 351 So.2d 484 (La.1977). In State v. Hatcher, 372 So.2d 1024 (La.1979), this Court discussed fully the requirements for admissibility of other crimes evidence under the modus operandi exception.
"In order to be admissible the extraneous offense evidence must meet several tests: (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; State v. Prieur, 277 So.2d 126 (La.1973); see also, State v. Gaines, 340 So.2d 1294, 1298 (La.1977) (concurring opinion); McCormick on Evidence, Sec. 190, pp. 451-52 (2d ed. 1972); (2) the modus operandi employed by the defendant in both the charged and the uncharged *100 offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; State v. Jackson, 352 So.2d 195 (La.1977); State v. Lee, 340 So.2d 1339, 1345 (La. 1977) (concurring opinion); (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. State v. Frederick, 340 So.2d 1353 (La.1976); (4) the other crimes evidence must tend to prove a material fact genuinely at issue; State v. Ledet, 345 So.2d 474 (La.1977); (5) the probative value of the extraneous crimes evidence must out weigh its prejudicial effect. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977)." Id. at 1033.
In the instant case, evidence of defendant's alleged prior rape of the victim was admissible either to prove intent under R.S. 15:445, or under the modus operandi exception to the "other crimes" exclusionary rule.
With respect to intent, it was the defendant who put the question of intent at issue by contending that he only intended to, and did, pay Ms. James to have intercourse with him. He claims that after he kicked the door down, he told her to either give him his money back, or "do what you supposed to do." Normally if the act is proved, there can be no real question as to intent. However, under the facts of this particular case there is a real issue of the defendant's intent to have intercourse without the victim's consent. Defendant's argument that intent is not an issue because he admits to having intercourse with the victim is incorrect. The issue is intent to perform the act without the victim's consent. Evidence of the prior incident is admissible to prove that intent.
We are of the opinion that the evidence is also admissible under the modus operandi exception. Analyzing the evidence in accordance with the pronouncements of State v. Hatcher, supra we find: (1) that there was clear evidence defendant committed the prior rape; (2) that the modus operandi employed by defendant, i.e., identifying himself as "Doc", was so distinctive as to logically say they are the work of the same person; (3) and (4) that the evidence of the prior rape was relevant to show that defendant had intercourse without the victim's consent on the second occasion, and further to prove the defendant's identity;[2] and (5) that the probative value of the evidence outweighed its prejudicial effect.
Therefore, we reject this assignment of error.
ASSIGNMENTS OF ERROR NOS. 2 and 3
By these assignments, defendant contends the trial court erred in allowing the prosecution to question him about prior convictions, and not granting a mistrial. The following testimony by the defendant is pertinent to this issue:
"Q. Yea. Now, you stated you were convicted of what?
A. Agg burglary.
Q. Agg burglary. Now agg burglary, of course, as you know, is the unauthorized entering of a structure, among other things, either while armed with a dangerous weapon or arming yourself after you get into a structure or committing what we call a battery on a person, that is hitting somebody while you're in there, with the intent of either stealing something or with the intent of committing a felony therein. I want you tobefore you answer this questionI don't want you to answer it right away because I have my own reasons. My question is, what was the felony involved in that aggravated burglary case?
A. What was the what?
Q. My question is this; you have said you were convicted of aggravated burglary. Now, aggravated burglary, under *101 our law, is the unauthorized entering into a structure, either armed with a dangerous weapon or arming yourself after you get in or committing a battery on a person after you're in there, accompanied with the intent, that is the intention, of either stealing or else of committing some other felony, and there are many of those. Now, my question is, what was the felony involved in your case that you were convicted of; what was the felony that you intended to commit in this unauthorized entry, the case that you have been convicted of?
A. Well, I was convicted of it but I don't even know nothing about that case.
Q. Where
A. I was convicted, you understand, sure.
Q. But, I want to knowyou were sittingyou were tried?
A. Yea, I was tried.
Q. You were convicted and you were sitting there and you heard the case like you're sitting here the last day or two, right?
A. Right.
Q. Now, I want to know what it was thatyour intentionwhat was the intention that was ascribed to you in that case?
A. The only thing I can gather look like they was trying to see whether I committed a battery.
Q. A what?
A. A battery or whatever you call it.
Q. Isn't it a fact that the felony that you were charged with having intended when you made this unauthorized entry was attempted aggravated rape?
A. No sir.
Q. You deny that?
A. I don't know what they call it.
Q. I mean, do you denydo you deny well, let's see, maybe I can help you out. The commission that you're talking about allegedly or did occur on June 3, 1978, in that you committed aggravated burglary of a structure located at 1628 Bynum, belonging to Willie M. Mitchell, Now, do you know Willie M. Mitchell?
A. Yes, I do.
Q. And she is whoshe's a female?
A. Yes.
Q. Now, in that case, were you not were you not convicted factually of breaking in that place, being armed and attempting to rape her? Wasn't that the charge in that case, to break it down factually?
A. Uhsee, I don't
Q. Wasn't that the State's case?
* * * * * *
Q. My question again, I didn't try that case, did I? Did I try this case to which you were convicted?
A. I don't know who.
Q. Did I?
A. I don't know who it was.
Q. Wasn'tyou were sitting thereyou were eyeballing those witnesses like you were today, were you not? Didn't that little Willie Mitchell get up there and say you tried to rape her?
Mr. Wilkins: Judge, I'm going to object.
Q. I'll ask the question one more time. Was not or isn't it true the offense you were convicted of, that is aggravated burglary, that the intended felony involved in this case you were convicted of, was attempted aggravated rape?
A. Yea."
Evidence of a prior conviction is permissible for impeachment purposes as set forth in La.R.S. 15:495, which provides:
"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever *102 been indicted or arrested, and can only be questioned as to conviction, and as provided herein."
Further, this Court has held that the state may cross-examine a witness as to the details of an offense for which the witness was convicted for purposes of establishing the true nature of the offense. State v. Jackson, 307 So.2d 604 (La.1975); State v. Elam, 312 So.2d 318 (La.1975). However care must be taken to avoid prejudice to the rights of the accused by expansive reference to details of a former conviction. State v. Oliver, 387 So.2d 1154 (La.1980).
Defendant maintains that the cross-examination by the prosecutor went beyond the bounds of an aggressive prosecution. He argues that the prosecutor named the victim, the date, and the place the offense occurred, and in so doing prejudiced the jury to such an extent as to deny defendant a fair trial. He asserts that the trial court should have granted a mistrial. We disagree. A review of the questions by the prosecutor and the responses by the defendant convinces us that the trial court was correct in its ruling. The defendant's credibility was under attack, and he consistently failed to reveal a vital element of the crime for which he had been previously convicted. It is apparent to this court that he made every effort to avoid the direct questions of the prosecutor. Had he told the truth when first asked about the felony he was alleged to have intended upon entering the structure, there would have been no need for the prosecutor to go any further in his questioning. However, by failing to be straightforward the prosecutor was obligated to pursue the matter to get to the truth.
Accordingly we find no merit to assignments 2 and 3.
ASSIGNMENT OF ERROR NO. 4
Defendant argues that the mandatory life sentence imposed pursuant to La.R.S. 14:42 was excessive under the circumstances of this case. In support thereof he cites the case of Hart v. Coiner, 483 F.2d 136 (4th Cir. 1973) which set forth certain factors to be considered in determining whether the sentence is constitutionally disproportionate to the offense. A similar argument was made in State v. Prestridge, 399 So.2d 564 (La.1981), where this Court stated:
"Counsel forcefully argues that mandatory sentences established by the legislature are subject to judicial review under the constitutional provision, that not all convictions for aggravated rape under LSA-R.S. 14:42 which proscribes varying types of behavior warrant the severe mandatory sentence of life imprisonment, that the mandatory sentence precludes individualized treatment of the offense and the offender, and that the sentence is particularly excessive in this case which did not involve the more brutal acts normally associated with the commission of the crime of aggravated rape.
This court is not prepared to hold that the mandatory life sentence imposed under LSA-R.S. 14:42 does not fall within the state legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. See and compare State v. Mallery, 364 So.2d 1283 (La.1978)distribution of heroin, LSA-R.S. 40:966; State v. Terrebonne, 364 So.2d 1290 (La.1978)distribution of heroin, LSA-R.S. 40:966A; State v. Daniel, 378 So.2d 1361 (La.1979)second degree murder, LSA-R.S. 14:30.1; State v. Brooks, 350 So.2d 1174 (La.1977)second degree murder, LSA-R.S. 14:30.1.
In light of Prestridge, this assignment lacks merit.
Although given no assignment of error, defendant argues in his brief that the pre-trial photographic lineup was so tainted that it rendered the in-court identification of defendant completely unreliable. If there was any error in the identification process, such error was harmless in view of the fact that defendant admitted to having intercourse with the victim.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, C. J., concurs with reasons.
LEMMON, J., dissents and assigns reasons.
*103 DIXON, Chief Justice (concurring).
I respectfully concur. "Other crimes" evidence must be relevant to a real issue in the case before it is admissible. "Intent" is not an issue in a rape case. "Modus operandi" is an issue only to prove identification of the offender. The real issue in this case is whether the prosecuting witness consented to the sexual act. Evidence of the prior rape was relevant to this issue.
LEMMON, Justice, dissenting.
The evidence of a prior attempted rape should not have been admitted. When a defendant takes the stand and places his credibility at issue, the fact of a prior conviction may be used in cross-examination to indicate his bad character as to credibility. Here, the fact of a prior conviction was properly admitted. However, the prosecutor's hammering away at the details underlying the former conviction had nothing to do with impeaching defendant's credibility. The sole purpose was to show that defendant had a tendency to commit rape, and the inquiry into the expansive details of the conviction (an inquiry unrelated to credibility) should have been curtailed in order to avoid the overwhelming prejudice which ultimately occurred. See State v. Oliver, 387 So.2d 1154 (La.1980).
This issue involves a basic question of fairness. Since I cannot say that the jury would have convicted defendant of rape without the disclosure that he had attempted a rape once before, I cannot say that he received a fair trial.[1] He should be retried before a jury that is exposed only to appropriate evidence bearing on his guilt of this crime.
NOTES
[*] Judges William Norris, III. and Fred C. Sexton, Jr., of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] R.S. 15:445 provides: "In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."

R.S. 15:446 provides: "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
[2] Although defendant argues his identity was not an issue since he admitted having intercourse with the victim, his argument is without merit because prior to his testimony he cross-examined the victim intensively as to her identification of defendant as the assailant.
[1] The victim and the defendant each related a plausible story. The jury might have believed either one, until the trial judge allowed the highly prejudicial evidence that defendant's prior conviction of aggravated burglary encompassed an attempted rape. That evidence sealed defendant's fate.